

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

**FILED**

AUG - 7 2014

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

*Mailing Address*
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

May 28, 2014

Robert B. Allen, Esquire
KAY, CASTO & CHANEY PLLC
707 Virginia Street - Suite 1500
Charleston, WV 25301

> Re: United States v. David E. Runyon

Dear Mr. Allen:

This will confirm our conversations with regard to your client, David E. Runyon. As a result of these conversations, it is agreed by and between the United States and Mr. Runyon as follows:

1. **CHARGING AGREEMENT.** Mr. Runyon agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Mr. Runyon will plead guilty to violations of 18 U.S.C. § 1951 (Extortion) and 26 U.S.C. § 7201 (Tax evasion) as charged in said information.

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Runyon will be exposed by virtue of this guilty plea is as follows:

Count One

    (a) Imprisonment for a period of twenty years;

    (b) A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's

Defendant's
Initials

conduct, whichever is greater;

(c)   A term of supervised release of three years;

(d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(e)   An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, as may otherwise be set forth in this plea agreement.

## Count Two

(a)   Imprisonment for a period of five years;

(b)   A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)   A term of supervised release of three years;

(d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013;

(e)   An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, as may otherwise be set forth in this plea agreement; and

(f)   Costs of prosecution.

## Maximum Potential Penalty

(a)   Imprisonment for a period of twenty-five years;

(b)   A fine of $500,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)   A term of supervised release of three years;

(d)   A mandatory special assessment of $200 pursuant to 18 U.S.C. § 3013;

Defendant's
Initials

(e)   An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, as may otherwise be set forth in this plea agreement; and

(f)   Costs of prosecution.

4.   **SPECIAL ASSESSMENT.**   Prior to the entry of a plea pursuant to this plea agreement, Mr. Runyon will tender a check or money order to the Clerk of the United States District Court for $200, which check or money order shall indicate on its face the name of defendant and the case number.   The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing.   Mr. Runyon will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement.   If Mr. Runyon fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement.   In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Runyon.

5.   **RESTITUTION.**   Notwithstanding the offense of conviction, Mr. Runyon agrees that he owes the following in restitution:

$ 1,000,000.00 to Arch Coal Inc.; and

$ 426,122.67 to the Internal Revenue Service.

Mr. Runyon agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible.   In aid of restitution, Mr. Runyon further agrees as follows:

(a)   Mr. Runyon agrees to pay $1,000,000.00 to the Court Registry before his sentencing for disbursement to Arch Coal, Inc. as restitution set forth above and to pay the remaining balance of $426,122.67 owed to the Internal Revenue Service in monthly installments of at least $1,000 a month following any term of imprisonment imposed;

(b)   Mr. Runyon agrees to fully assist the United States in

_____
Defendant's
Initials

identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

(c)   Mr. Runyon will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel for the United States within seven calendar days from the date of the signing of this plea agreement.

(c)   Mr. Runyon agrees not to dispose of, transfer or otherwise encumber any real or personal property which he currently owns or in which he holds an interest.

(d)   Mr. Runyon agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest he may have in and to such property, and waives his right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e)   Mr. Runyon agrees not to appeal any order of the District Court imposing restitution unless the amounts of restitution imposed exceeds the amount set forth in this plea agreement. However, nothing in this provision is intended to preclude the Court from ordering Mr. Runyon to pay a greater or lesser sum of restitution in accordance with law.

6.   **IRS COLLECTION OF RESTITUTION.**   If the Court orders Mr. Runyon to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment.   See 26 U.S.C. § 6201(a)(4). Mr. Runyon does not have the right to challenge the amount of this assessment.   See 26 U.S.C. § 6201(a)(4)(C).   Neither the existence of a restitution

Defendant's
Initials

payment schedule nor Mr. Runyon's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution based assessment, including levy and distraint under 26 U.S.C. 6331.

    7.   **PAYMENT OF MONETARY PENALTIES.**  Mr. Runyon agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States.  So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Runyon further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

    8.   **COOPERATION.**  Mr. Runyon will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States.  In complying with this provision, Mr. Runyon may have counsel present except when appearing before a grand jury. Further, Mr. Runyon agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

    9.   **ASSISTANCE TO INTERNAL REVENUE SERVICE.**  Mr. Runyon agrees to cooperate with the Internal Revenue Service in the determination of his civil income tax liability for the taxable years 2006 through 2013 and to make available to the examining agents all books, records and other documentary evidence in his or the company's possession, custody or control, including all materials provided to the defense, through discovery or otherwise, during this proceeding by the attorneys for the government and any criminal investigators assisting them.

    10.  **USE IMMUNITY.**  Unless this agreement becomes void due to a violation of any of its terms by Mr. Runyon, and except as expressly provided or in paragraph 12 below, nothing contained in any statement

or testimony provided by Mr. Runyon pursuant to this agreement, or any evidence developed therefrom, will be used against Mr. Runyon, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

11. **LIMITATIONS ON IMMUNITY.**  Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Runyon for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Runyon for perjury or false statement if such a situation should occur pursuant to this agreement.

12. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Runyon stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Mr. Runyon agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Mr. Runyon, and Mr. Runyon is subsequently tried on any of the charges in the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Runyon or of any of his witnesses, or in rebuttal of any testimony introduced by Mr. Runyon or on his behalf. Mr. Runyon knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Runyon understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

Defendant's
Initials

13. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Runyon agree that the following provision of the United States Sentencing Guidelines applies to this case.

Count One - USSG §2B3.2

| | |
|---|---|
| Base offense level | 18 |
| Increase based upon §2B3.1(b)(7)<br>   (Approximately $1.8 million) | 5 |
| Aggravating Role | 4 |
| Abuse of Trust | +2 |
| Adjusted Offense Level | 29 |

Count Two - USSG §2T1.1

| | |
|---|---|
| Base Offense Level | 20 |
| Tax Loss of $~~716,270.67~~ $426,122.67 | |
| Criminally derived Income | +2 |
| Adjusted Offense Level | 22 |

*Grouping Application*

| | |
|---|---|
| §3D1.2(c) and §3D1.2<br>Highest offense level | 29 |

The United States and Mr. Runyon acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

14. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Runyon

_____
Defendant's
Initials

knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute.  The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Mr. Runyon also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

15.  **WAIVER OF FOIA AND PRIVACY RIGHT.**  Mr. Runyon knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

16.  **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence.  The United States reserves the right to:

(a)  Inform the Probation Office and the Court of all relevant facts and conduct;

Defendant's
Initials

    (b)    Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)    Respond to questions raised by the Court;

    (d)    Correct inaccuracies or inadequacies in the presentence report;

    (e)    Respond to statements made to the Court by or on behalf of Mr. Runyon;

    (f)    Advise the Court concerning the nature and extent of Mr. Runyon's cooperation; and

    (g)    Address the Court regarding the issue of Mr. Runyon's acceptance of responsibility.

17.   **VOIDING OF AGREEMENT.**  If either the United States or Mr. Runyon violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

18.   **TAX DIVISION APPROVAL.**  It is understood that this agreement is conditioned upon approval by the Department of Justice, Criminal Tax Division. In the event such approval is not granted, this agreement shall be void.

19.   **ENTIRETY OF AGREEMENT.**  This written agreement constitutes the entire agreement between the United States and Mr. Runyon in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Mr. Runyon in any Court other than the United States District Court for the Southern District of West Virginia.

Defendant's
Initials

Re: David E. Runyon

Acknowledged and agreed to on behalf of the United States:

R. BOOTH GOODWIN II
United States Attorney

By: _____
MEREDITH GEORGE THOMAS
Assistant United States Attorney

By: _____
THOMAS C. RYAN
Assistant United States Attorney

MGT/fgc

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this ten-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____      5/29/14
David E. Runyon                Date Signed
Defendant

_____      5/29/14
Robert B. Allen               Date Signed
Counsel for Defendant

_____      5/29/14
Christian M. Capece           Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. _____
                                          18 U.S.C. § 1951
                                          26 U.S.C. § 7201
DAVID E. RUNYON

I N F O R M A T I O N

The United States Attorney Charges:

## COUNT ONE

**(Extortion By Wrongful Use of Fear of Economic Loss)**

1. At all relevant times, defendant DAVID E. RUNYON was the
general manager of the Mountain Laurel Mining Complex ("Mountain
Laurel"), which is owned by Mingo Logan Coal Company, a wholly
owned subsidiary of Arch Coal, Inc. ("Arch"). Mountain Laurel
was located in Sharples, Logan County, West Virginia.

### Mountain Laurel Kickback Scheme

2. As general manager, defendant DAVID E. RUNYON oversaw
all aspects of the operation of Mountain Laurel, including the
purchasing and the selection of vendors at Mountain Laurel.

3. From in or about 2006 through 2013, defendant DAVID E.
RUNYON participated in, and benefited from, an assortment of
extortion schemes where he and other Arch employees, including
persons known and unknown to the United States Attorney,

including a specific Arch employee identified as "Known Person Four," were paid cash kickbacks by vendors in return for their continued business with Mountain Laurel. The primary scheme encompassed four component schemes: a general Rebuild Kickback Scheme, the Miner/Bolter Rebuild Kickback Scheme, the Construction Work Kickback Scheme, and the Contract Labor Kickback Scheme.

### Rebuild Kickback Scheme

4. From approximately 2006 through March 2011, Stephen B. Herndon ("S. Herndon") was the warehouse manager at Mountain Laurel. Among other duties, as warehouse manager, S. Herndon was responsible for soliciting bids for equipment rebuild jobs, which generally included the disassembly, cleaning and inspection of machines used in coal mining, with the rebuilding or replacement of parts that were worn, broken, or scheduled to be replaced.

5. At all relevant times, for any rebuild job over $25,000, Arch required that Mountain Laurel obtain three competitive bids from qualified vendors.

6. In approximately 2006, Known Person Four set up a scheme at Mountain Laurel with Tri-State Mine Repair to manipulate Arch's bidding process. In exchange for guaranteeing that Tri-State received a certain amount of rebuild work, other vendors were asked to submit bids which Known Person Four knew would not

receive the work because they would normally be original equipment manufacturers ("OEM") prices. To guarantee it would be the successful bidder and received work, Tri-State made a cash kickback to Known Person Four, which kickback was shared with defendant DAVID E. RUNYON.

7. 8. S. Herndon, while warehouse manager at Mountain Laurel, sometimes facilitated the kickback payments by serving as a conduit for the transfer of cash between the vendor to defendant DAVID E. RUNYON and others known and unknown to the United States Attorney.

9. The vendors participating in the Rebuild Kickback Scheme included Tri-State Mine Service, Inc. ("Tri-State"), which was initially owned by Scott E. Ellis, who was later joined by S. Herndon in April 2011; and Carter Sales and Service ("CSS"), later replaced by Apex Mining Construction and Repair, Inc. ("Apex"), both owned by Donald R. Carter II.

10. Between sometime in 2009 through and until at least September 2013, Tri-State, by and through Scott E. Ellis and later Stephen B. Herndon, would and did pay approximately $425,000 in cash kickbacks to defendant DAVID E. RUNYON, Known Person Four, and others known and unknown to the United States Attorney, in exchange for Tri-State receiving certain rebuild jobs.

11. From approximately 2007 through 2012, Carter, through CSS and then Apex would and did pay approximately $380,000 in cash kickbacks to defendant Known Person Four, others known and unknown to the United States Attorney and defendant DAVID E. RUNYON in exchange for CSS, and later Apex, receiving certain rebuild jobs at Mountain Laurel.

12. Carter, Ellis and later S. Herndon all understood from their dealings with defendant DAVID E. RUNYON and others known and unknown to the United States Attorney that they would cease being vendors on the Mountain Laurel property if they stopped paying kickbacks.

13. If the vendors lost the Mountain Laurel business, defendant DAVID E. RUNYON understood each of them would suffer a loss of business and economic harm.

### Miner/Bolter Rebuild Kickback Scheme

14. Ronald Barnette owned and operated Mining Repair Specialist, Inc. ("MRS"), a corporation that performed equipment rebuild and repair work for various mining companies and mining related businesses in southern West Virginia, including rebuilding miners and roof bolters.

15. From approximately 2009 through and until at least sometime in 2012, Barnette would and did pay defendant DAVID E. RUNYON and others known and unknown to the United States

Attorney approximately $300,000 in cash kickbacks in exchange for received rebuild work related to miners and roof bolters.

16. Barnette understood from his dealings with defendant DAVID E. RUNYON that he would cease being a vendor on the Mountain Laurel property if he stopped paying kickbacks.

17. If the MRS lost the Mountain Laurel business, defendant DAVID E. RUNYON understood it would suffer a loss of business and economic harm.

## Construction Work Kickback Scheme

18. From late 2005 through and until at least early 2014, Alvis R. Porter operated Quality Oil, Inc. ("Quality Oil"), doing business as Southern Construction of Logan, on the site of Mountain Laurel. Quality Oil provided a variety of construction services to Mountain Laurel, including the rental and operation of heavy equipment.

19. From approximately 2009 through 2012, Porter would and did pay defendant DAVID E. RUNYON approximately $400,000 in cash in exchange for guaranteeing Quality Oil continued to receive construction work from Mountain Laurel.

20. Porter understood from his dealings with defendant DAVID E. RUNYON that he would cease being a vendor on the Mountain Laurel property if he stopped paying kickbacks.

21. If the Quality Oil lost the Mountain Laurel business, defendant DAVID E. RUNYON understood it would suffer a loss of business and economic harm.

## Contract Labor Kickback Scheme

22. From late 2005 through and until at least early 2014, David Herndon ("D. Herndon") owned and operated MAC Mine Service, Inc., which provided contract labor at Mountain Laurel. The coal miners were employees of MAC Mine Service, Inc. and MAC Mine Service, Inc. charged a fee to the Mountain Laurel Mining Complex for providing such labor.

23. From sometime in early 2009 through and until sometime in early 2013, D. Herndon would and did pay defendant DAVID E. RUNYON approximately $340,000 in cash in exchange for guaranteeing MAC Mine Service continue to receive the exclusive right to provide contract labor to Mountain Laurel.

24. D. Herndon understood from his dealings with defendant RUNYON that he would cease being a vendor on the Mountain Laurel property if he stopped paying kickbacks.

25. If MAC Mine Service lost the Mountain Laurel business, defendant DAVID E. RUNYON understood it would suffer an economic harm.

## EXTORTION BY WRONGFUL USE OF FEAR OF ECONOMIC LOSS

26. From in or about 2006 through 2013, in Sharples, Logan County, West Virginia, in the Southern District of West Virginia

and elsewhere, defendant DAVID E. RUNYON did knowingly attempt to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion and attempt to do so in that, defendant DAVID E. RUNYON obtained and attempted to obtain the property of vendors performing services at the Mountain Laurel Mining Complex, with the consent of the vendors induced by the wrongful use of force and fear, including fear of economic loss.

In violation of Title 18, United States Code, Section 1951.

1. The United States Attorney re-alleges paragraphs 1-25 of Count One as if fully set forth herein.

2. On or about April 15, 2013, at or near Logan, Logan County, West Virginia, within the Southern District of West Virginia, defendant DAVID E. RUNYON did willfully attempt to evade and defeat a large part of the income tax due and owing by him and his spouse to the United States for the calendar year 2012, by preparing and causing to be prepared, and by signing and by causing to be signed, a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, on behalf of himself and his spouse, which was filed with the Internal Revenue Service. In fact, as he then and there knew, their taxable income for that calendar year was substantially in excess of the amount stated on the return based on the receipt of illegal cash kickbacks paid by various vendors at the Mountain Laurel Mining Complex, and, upon the additional taxable income, a substantial additional tax was due and owing to the United States of America.

In violation of Title 26, United States Code, Section 7201.

                                    UNITED STATES OF AMERICA
                                    R. BOOTH GOODWIN II
                                    United States Attorney

                          By:    _____
                                    MEREDITH GEORGE THOMAS
                                    Assistant United States Attorney

                          By:    _____
                                    THOMAS C. RYAN
                                    Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

UNITED STATES OF AMERICA

v.                       CRIMINAL NO. _____

DAVID E. RUNYON

### STIPULATION OF FACTS

The United States and David E. Runyon ("Mr. Runyon") stipulate and agree that the facts comprising the offenses of conviction in the Information in the southern District of West Virginia, and the relevant conduct for that offense, include the following:

Since approximately 2006 to April 2014, Mr. Runyon was the general manager at Mountain Laurel Mining Complex ("Mountain Laurel"), which is owned by Mingo Logan Coal Company, a wholly owned subsidiary of Arch Coal, Inc. Mountain Laurel is located in Sharples, Logan County, West Virginia.

As general manager, Mr. Runyon's duties extended across all aspects of the operation of Mountain Laurel, an underground and surface coal mining complex which sold millions of tons of coal per year. Mr. Runyon's substantial responsibilities also encompassed the oversight of purchasing.

### Hobbs Act – Extortion

Mr. Runyon participated in, and benefited from, an assortment of extortion schemes where he and other Arch Coal employees, including a person known to the United States Attorney ("Known Person Four") and Steve Herndon, were paid cash kickbacks by vendors in return for their continued business with Mountain Laurel.

### Rebuild Kickback Scheme

Rebuild jobs generally included the disassembly, cleaning and inspection of machines used in coal mining, with the

00423393.DOCX

rebuilding or replacement of parts that were worn, broken, or scheduled to be replaced. For any rebuild job over $25,000, Arch required that Mountain Laurel obtain three competitive bids from qualified vendors.

In approximately 2006, Known Person Four set up a scheme at Mountain Laurel with Tri-State Mine Repair to manipulate Arch's bidding process. In exchange for guaranteeing that Tri-State received a certain amount of rebuild work, other vendors were asked to submit bids which Known Person Four knew would not receive the work because they would normally be original equipment manufacturers ("OEM") prices. To guarantee it would be the successful bidder and received work, Tri-State made a cash kickback to Known Person Four, which kickback was shared with Runyon (the "Rebuild Kickback Scheme"). In approximately 2008 Mr. Herndon started sharing in the kickbacks.

From approximately 2006 through March 2011, Mr. Herndon was the warehouse manager at Mountain Laurel property. Among other duties, the warehouse manager was responsible for soliciting bids for equipment rebuild jobs. Mr. Herndon facilitated the kickback payments by serving as a conduit for the transfer of cash between the vendor and himself along with Known Person Four and Mr. Runyon.

At various times the vendors participating in the Rebuild Kickback Scheme included:

- Tri-State Mine Service, Inc. ("Tri-State"), which was initially owned by Scott Ellis. Mr. Ellis was later joined by Stephen Herndon in April 2011; and

- Carter Sales and Service ("CSS"), later replaced by Apex Mining Construction and Repair, Inc. ("Apex"), both owned by Donald Carter.

In or about October 2008, Arch Coal obtained information regarding a potential rebuild kickback scheme at the Mountain Laurel Mining Complex. Arch Coal retained an outside accounting firm to conduct an internal investigation ("2008 Internal Investigation"). The Rebuild Kickback Scheme went undetected.

From 2009 to March 2011, Mr. Ellis paid approximately $187,500 in cash kickbacks to Messrs. Runyon, Herndon and Known

00423393.DOCX

Defendant's
Initials

**PLEA AGREEMENT EXHIBIT "B"**

Person Four.  The cash kickback payment amounts varied according to the time of the month the payments were delivered.  After Stephen Herndon joined Mr. Ellis at Tri-State in April 2011, the method of payment changed.  The agreed upon amount to be paid was generally $10,000 a month rather than ten percent.  Between April 1, 2011, and September 30, 2013, Mr. Herndon and Mr. Ellis paid approximately $237,000 in cash kickbacks to Messrs. Runyon and Known Person Four.  There were periods when Tri-State did not have available cash and no payments were made.

From approximately 2007 through 2012, Mr. Carter believes that he paid approximately $380,000 to Mr. Herndon, the primary contact with Mr. Carter.  Mr. Herndon shared the funds with Mr. Runyon and Known Person Four.  To the best of his recollection, Mr. Runyon believes he received approximately $75,000 from Mr. Carter through Mr. Herndon.

Messrs. Carter, Ellis and later Mr. Herndon all understood they would cease being vendors on the Mountain Laurel property if they stopped paying kickbacks.  The understanding was not and did not have to be verbalized because the vendors knew what would happen if they ceased paying the kickbacks.  If the vendors lost the Mountain Laurel business, each of them would suffer a loss of business and economic harm.

## Miner/Bolter Rebuild Kickback Scheme

Ronald Barnette owned and operated Mining Repair Specialist, Inc. ("MRS"), a corporation that performed equipment rebuild and repair work for various mining companies and mining related businesses, including rebuilding miners and bolters.

In or about 2008, MRS was doing a limited amount of business with Mountain Laurel and dealt primarily with Known Person Four.  During this period there were periodic kickbacks shared by Known Person Four, Runyon and Herndon.  When Known Person Four got sick in 2009, Ronald Barnette met with Dave Runyon and Mr. Barnette offered to pay Mr. Runyon directly ten percent of major equipment repairs.  Mr. Runyon agreed to this proposal which continued until about August 2011 when MRS stopped paying due to a federal investigation of its bank accounts.  No payments were made until approximately February 2012 when MRS started paying approximately five percent for about five months.  Mr. Runyon shared those payments with Known Person Four and Mr. Herndon.

Defendant's
Initials

From approximately 2008 through and until at least sometime in 2012, Mr. Barnette would and did pay Known Person Four, Mr. Herndon, and Mr. Runyon approximately $300,000 in cash kickbacks, and while he knew it was wrong, Mr. Barnette understood that if he did not pay these individuals kickbacks, MRS would no longer do rebuild work at Mountain Laurel.

## Construction Work Kickback Scheme

From late 2005 through and until at least early 2014, Mr. Porter operated Quality Oil, Inc. ("Quality Oil"), doing business as Southern Construction of Logan ("Southern Construction"), on the site of the Mountain Laurel Mining Complex. Quality Oil provided a variety of construction services to the Mountain Laurel Mining Complex, including the rental and operation of heavy equipment.

In approximately 2009, Mr. Porter advised Mr. Runyon that his company was doing well and he wanted to continue to work on the property. Mr. Porter said "Let's both get our barrels full" and offered to start paying kickbacks due to his fear that unless kickbacks were paid he would lose the business and suffer economic harm. Initially, Mr. Porter paid from $1,000 to $4,000 per month which was later increased to $5,000 per month. Over the course of approximately four years, that amount eventually increased to $10,000 a month. Over that time period, Mr. Porter estimates that he paid approximately $400,000 in cash to Mr. Runyon as part of the Construction Work Kickback Scheme. These payments were always made in person and normally on the property at the Mountain Laurel Mining Complex. Mr. Porter acknowledged that these payments were wrong, but he believed were necessary at the time to retain the work for Quality Oil at the Mountain Laurel Mining Complex.

## Contract Labor Kickback Scheme

From late 2005 through and until at least early 2014, David Herndon owned and operated MAC Mine Service, Inc., which provided contract labor at Mountain Laurel. The coal miners were employees of MAC Mine Service, Inc. and MAC Mine Service, Inc. charged a fee to Mountain Laurel Mining Complex for providing such labor.

00423393.DOCX

Defendant's
Initials

**PLEA AGREEMENT EXHIBIT "B"**

Beginning sometime in early 2009, the contract labor kickback scheme began when Mr. Herndon started paying $10,000 a quarter in cash kickbacks to Mr. Runyon in order to ensure MAC Mine Service retained the exclusive right to provide contract labor services (the "Contract Labor Kickback Scheme"). Mr. Runyon had helped Mr. Herndon get started with MAC Mining Service, Inc. and they enjoyed a close working relationship. Mr. Herndon, knowing that the payments were illegal and the Mountain Laurel contract was otherwise lucrative, paid Mr. Runyon on a quarterly basis due to his fear of losing the business.

Going forward, Mr. Herndon was doing very well financially and he and Mr. Runyon agreed Mr. Herndon would pay $20,000 a month, or $60,000 a quarter. Mr. Herndon agreed to make the payments because the Mountain Laurel contract was so lucrative.

Between 2009 and February 2013, Mr. Herndon paid Mr. Runyon approximately $340,000 in illegal kickbacks. Mr. Herndon paid the kickbacks because he believed MAC Mine Service, Inc. would lose the business at Mountain Laurel if the payments were not made.

Sometime in the early part of 2013, Mr. Herndon decided to stop making the cash kickback payments to Mr. Runyon because of the federal investigation in the Logan area. Mr. Herndon informed him that he was going to no longer participate in the Contract Labor Kickback Scheme.

In the next day or so, Mr. Runyon contacted Mr. Herndon and wanted to meet in the parking lot of the Logan Regional Medical Center in Logan, West Virginia. Mr. Runyon returned some of the cash kickback payments in an attempt to conceal the evidence of the Contract Labor Kickback Scheme. By returning the money to Mr. Herndon, Mr. Herndon would be able to explain where all of the cash was that he had been taking out of his bank account.

### Tax Evasion

Mr. Runyon's joint tax returns were subscribed by him in Logan, West Virginia, within the Southern District of West Virginia. Mr. Runyon caused the tax returns to be prepared in Logan, West Virginia.

Defendant's
Initials

**PLEA AGREEMENT EXHIBIT "B"**

Mr. Runyon caused to be prepared and filed joint U.S. Individual Income Tax Returns for each of the calendar years 2007-2012.

On the joint returns, Mr. Runyon did not report as income the cash kickbacks that he received from vendors at Mountain Laurel that he required the vendors pay in exchange for their continued selection as vendors at Mountain Laurel. To the best of his recollection, Mr. Runyon received approximately $1 million as a result of his participation in the Rebuild Kickback Scheme, the Miner/Bolter Kickback Scheme, Construction Work Kickback Scheme, and the Contract Labor Kickback Scheme.

Based on the foregoing estimate, Mr. Runyon agrees that the tax loss resulting from his offense and relevant conduct is $426,122.67 as follows:

| Calendar Year | Additional Tax Due and Owing |
|---------------|------------------------------|
| 2007          | $ 7,501.26                   |
| 2008          | $ 64,827.50                  |
| 2009          | $ 78,424.93                  |
| 2010          | $ 83,975.50                  |
| 2011          | $ 64,441.51                  |
| 2012          | $126,951.96                  |
| Total         | $426,122.67                  |

Defendant's Initials

**PLEA AGREEMENT EXHIBIT "B"**

This Stipulation of Facts does not contain each and every fact known to Mr. Runyon and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

_____      _____
DAVID RUNYON                          Date 5/29/14
Defendant

_____      _____
ROBERT B. ALLEN                       Date 5/29/14
Counsel for Defendant

_____      _____
CHRISTIAN M. CAPECE                   Date
Counsel for Defendant

_____      _____
MEREDITH GEORGE THOMAS                Date 5·30·14
Assistant United States Attorney

_____      _____
THOMAS C. RYAN                        Date 5·30·14
Assistant United States Attorney

Defendant's
Initials

**PLEA AGREEMENT EXHIBIT "B"**